Samara F. SWANSTON,
Plaintiff–Appellant,

v.

John CAHILL, as Acting Commissioner of the DEC, Charles E. Sullivan, Jr., as DEC Bureau Chief, Frank Bifera, as Acting General Counsel to the DEC, The State of New York, The Department of Environmental Conservation, The Town of Beekman, The Law Firm of Keene & Beane, and The Law Firm of Zuckerman, Spaeder, Goldstein, Taylor & Kulker, LLP, Defendants–Appellees,

George E. PATAKI, as Governor of the State of New York, Defendant.

No. 01–7634.

United States Court of Appeals, Second Circuit.

Dec. 6, 2001.

Josh H. Kardisch, Helfer Helfer & Kardisch, Bellmore, NY, for appellant.

Barbara K. Hathaway, Ass't Atty. Gen., N.Y., NY, for appellees.

Present OAKES, KEARSE, and CALABRESI, Circuit Judges.

## SUMMARY ORDER

This cause came on to be heard on the record from the United States District Court for the Southern District of New York, and was argued by counsel.

ON CONSIDERATION WHEREOF, it is now hereby ordered, adjudged, and decreed that the judgment of said District Court be and it hereby is affirmed.

Plaintiff Samara F. Swanston, an attorney formerly employed by defendant New York State Department of Environmental Conservation (the "State" or "DEC"), appeals from so much of a final judgment of the United States District Court for the Southern District of New York as dismissed her claims against DEC, its Acting Commissioner defendant John Cahill, and DEC officials defendants Frank Bifera and Charles E. Sullivan, Jr., alleging termination of her employment in October 1996 on the basis of her race, in violation of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and against DEC and the State of New York alleging violation of her rights under the First Amendment to the Constitution. In an Opinion and Order dated April 20, 2001 ("2001 Opinion"), the district court, John S. Martin, Jr., *Judge,* granted summary judgment dismissing Swanston's Title VII claims on the ground that DEC proffered a legitimate nondiscriminatory reason for terminating Swanston's employment, to wit, that while Swanston was still a State employee she represented a group whose interests were at odds with those of the State, and that Swanston failed to come forward with evidence sufficient to rebut that proffer. The

court found that Swanston's First Amendment claims were barred by the Eleventh Amendment. On appeal, Swanston contends principally that she presented sufficient evidence to create a genuine issue to be tried as to the reason for her termination. She also challenges a March 3, 2000 ruling by Judge Martin ("2000 Opinion"), and a July 15, 1999 ruling by Judge Kevin Thomas Duffy ("1999 Opinion"), holding that her Title VII claims based on events prior to June 7, 1996, are barred by the statute of limitations governing the filing of discrimination charges with the Equal Employment Opportunity Commission; Swanston contends that defendants' actions constituted a continuing violation of her Title VII rights. Finding no merit in Swanston's contentions, we affirm.

It was undisputed that New York State was engaged in ongoing negotiations with the Oneida Indian Nation ("the Oneida") with respect to land claims and gaming contracts; that the interests of a subgroup of the Oneida known as the "Traditional People" were at odds with the interests of the Oneida; that Swanston received notice that, effective September 1, 1995, her State employment would be terminated, but within a few days thereafter received notice that she would remain on the State payroll until September 22; and that on September 21, Swanston signed an affidavit in support of the Traditional People against the Oneida in an administrative appeal proceeding before the United States Department of the Interior. It is also undisputed that Swanston remained employed, or was reemployed, by DEC on or after September 22, 1995; that she then remained employed by DEC until the fall of 1996; that on or about September 14, 1996, DEC received a letter from the Oneida complaining and expressing "amaze[ment] that the State would permit one of its

attorneys to attack an Indian nation with which the State has ongoing negotiations and a government-to-government relationship"; and that following receipt of that letter, and after seeking an explanation from Swanston, DEC terminated Swanston's employment in October 1996. Swanston's assertion of her own belief that she had not violated New York State conflict-of-interest rules was insufficient to cast doubt on the bona fides of DEC's assertion that her employment was terminated because of her violation of those rules.

■ Although Swanston presented evidence that she was the only minority lawyer in the Office of General Counsel at DEC, she presented no evidence that she was treated differently from nonminority employees who were similarly situated. She presented no evidence that any other employee had engaged in outside legal practice. She argued that she had been treated differently from her Caucasian counterpart in a different region, in that during DEC layoffs in March 1995 her employment was terminated (temporarily) but his was not. But that employee was an armed-services veteran whose retention was required by civil service laws; thus, he and Swanston were not similarly situated. Swanston also proffered no anecdotal evidence of any invidious remarks by DEC employees. Her only anecdotal evidence of a racial nature was a racist joke by an employee of a municipal entity with which the State was in negotiations. That joke could not be imputed to the State, and Swanston adduced no evidence of racial animus on the part of the State. Finally, although Swanston argues that racial animus can be inferred from the fact that Cahill stated, falsely, to the State Ethics Commission that Swanston's employment was terminated for economic reasons, the record does not support such an inference.

Cahill testified that DEC had attributed all of its 1995 firings to economic reasons in order that the terminated employees not be subject to the two-year ban on appearing or practicing before their former agency, and that he "wanted to give [Swanston] the same terms of termination that other exempt employees had received." Swanston presented no evidence to rebut the testimony that she had been treated the same as other similarly situated nonminority employees with respect to the explanation given for their terminations.

In sum, the evidence proffered by Swanston was insufficient to rebut the State's showing that Swanston's employment was terminated in 1996 because of her representation of the Traditional People, and no rational juror could conclude that she was fired because of her race. We affirm the dismissal of the Title VII claims substantially for the reasons stated in the district court's 2001 Opinion.

Swanston's other contentions do not warrant extended discussion. For the reasons stated in the court's 1999 and 2000 Opinions, the record shows no evidence from which a continuing violation of Title VII could be found. Swanston's First Amendment claims, which she asserted only against DEC and New York State, are barred by the Eleventh Amendment for the reasons stated in the 2001 Opinion.

We have considered all of Swanston's contentions on this appeal and have found them to be without merit. The judgment of the district court is affirmed.